**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **AUTHOR RAY TURNER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:12-cv-0915** |
| | ) | |
| **DAN WELKAL et al.,** | ) | **Judge Trauger** |
| | ) | **Magistrate Judge John Bryant** |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Before the court are the plaintiff's objections (ECF No. 107) to a Report and Recommendation (ECF No. 96) issued by Magistrate Judge Bryant, recommending that the court grant the motion to dismiss (ECF No. 48) filed by defendants ABL Management, Inc. (incorrectly identified in the complaint as ABL Food Service), Vernistene Dulin (identified in the complaint as Mrs. V. Dulin), and Juanez Woods (identified in the complaint as Mrs. Wood) (collectively, the "ABL Defendants"). Also pending are objections (ECF No. 121) filed by the Davidson County Sheriff's Office Defendants (the "DCSO Defendants")[1] and by plaintiff Author Turner (ECF No. 126) to a second Report and Recommendation (ECF No. 115) issued by Magistrate Judge Bryant, recommending that the DCSO Defendants' motion to dismiss be granted in part and denied in part.

During the pendency of these motions and the various objections to the magistrate judge's recommendations, the plaintiff filed a motion to amend his complaint (ECF No. 122). Both sets of defendants have filed responses in opposition to the motion to amend the complaint, and the plaintiff has filed replies to both responses. The motion is ripe for consideration.

Generally speaking, where both a motion to amend and a motion to dismiss the complaint are pending, the district court abuses its discretion by dismissing a suit on the basis of the original complaint without first considering and ruling on the pending motion to amend. *Ellison v. Ford Motor Co.*, 847 F.2d 297, 300 (6th Cir.1987). Accordingly, the court will first consider the plaintiff's motion to amend and the

---

[1] The DCSO Defendants are defendants Dan Weikal (incorrectly named in the complaint as Dan "Welkal"), K. Cox, Granvisse Earl-Young, Pam Hale, Sylvia Gray, Henry Lehman, Joshua Bone, Clarence Crawley, G. Thomas, Jonathan Craft, Byron Grizzle, Lynn Norris, Tony M. Wilkes, and Joshua Stagg.

proposed amended complaint and then will review the objections to the motions to dismiss.

I.      STANDARDS OF REVIEW

A.      Motion to Amend the Complaint

"[A] party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave," however, "when justice so requires." *Id.* Leave is appropriate "[i]n the absence of . . . undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Leary v. Daeschner*, 349 F.3d 888, 905 (6th Cir. 2003) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "Amendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss." *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 (6th Cir. 2005) (citing *Neighborhood Dev. Corp. v. Advisory Council on Historic Pres.*, 632 F.2d 21, 23 (6th Cir. 1980)).

Although "undue delay" is identified in the rule as a sufficient basis for denying a motion to amend, it is generally recognized that "[d]elay alone . . . does not justify the denial of leave to amend. Rather, the party opposing a motion to amend must make some significant showing of prejudice to prevail." *Sec. Ins. Co. of Hartford v. Kevin Tucker & Assocs.*, 64 F.3d 1001, 1009 (6th Cir. 1995).

B.      Motion to Dismiss

Federal Rule of Civil Procedure 8(a)(2) sets out a liberal pleading standard, *Smith v. City of Salem*, 378 F.3d 566, 576 n.1 (6th Cir. 2004), requiring only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the [opposing party] fair notice of what the . . . claim is and the grounds upon which it rests,'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Detailed factual allegations are not required, but a party's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted; alteration in original).

In deciding a Rule 12(b)(6) motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and draw all reasonable inferences in favor of the plaintiff, *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007), and then determine

whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "Determining whether a complaint states a plausible claim for relief will [ultimately] . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### C.      Objections to Magistrate Judge's Report and Recommendations

The standard applying to a district court's review of a magistrate judge's report and recommendation depends upon whether a party files objections. If a party does not object to the report and recommendation, no particular standard is prescribed by the applicable rules. *See* Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 150 (1985). Thus, concerning those portions of the magistrate judge's R&Rs to which no one has objected, the court need not conduct a review.

If a party does object to portions of a report and recommendation relating to a dispositive matter, the court must review those portions *de novo*, in accordance with Rule 72(b) of the Federal Rules of Civil Procedure. This rule states, in relevant part:

> The district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1)(C).

## II.      THE ABL DEFENDANTS

### A.      Factual Background

Specifically regarding the ABL Defendants, the plaintiff alleges that:

> Plaintiff is a practicing Muslim, who follows a halal diet and observes Ramadan. His diet prohibits him from eating haram (unlawful food), which includes animals killed improperly, pork, pork by-product, blood and blood by-product. ABL served inmates on a halal diet "processed meats such as fish, hot dogs" on March 8, 2012, even though the halal dietary restrictions prohibit the plaintiff from eating "process[ed] meat in any form." ([Complaint] at 21) Plaintiff states in his Memorandum of Law in support of Motion in Opposition that he was served processed meat for two weeks. Plaintiff claims that while Vernistene Dulin was employed as the ABL food service supervisor, she was aware of the halal diet requirements and served Muslim inmates processed meats in spite of her knowledge that it was against their religious beliefs. Plaintiff also stated that he filed a grievance against ABL during his incarceration citing its failure to provide normal religious diet portions, properly wrapped trays and "serving under cook[ed] rice." (*Id.*)

> Plaintiff further alleges that during the month of Ramadan, specifically on July 20, 2012, he went to the cafeteria only to discover that he would not be fed "because either ABL had not made [him] a tray or one of the D.C.S.O Deputy had [given] away [his] tray." (*Id.* at 17) Due to missing his evening meal, the plaintiff went twenty-four hours without eating.

(ECF No. 96, at 2 (some internal citations omitted).)

### B.    Proposed Amended Complaint

In his proposed amended complaint, the plaintiff reiterates most of the claims in his original complaint. His new allegations primarily concern a "deathly" food allergy to beans and peas. The plaintiff alleges that he repeatedly informed jail officials, including the ABL Defendants, about his food allergy and that he signed up for sick call repeatedly "about his food allergies," but that the Davidson County Sheriff's Office health-care workers "refuse to give the plaintiff an allergies test for these Issues nor contact the A.B.L. Management food service defendants about the plaintiff food all[erg]ies of beans and peas." (ECF No. 122-1, at 14.) The plaintiff also alleges that he "lost over 50 pounds during this time period[2] from lack of the proper nutritional [sic] [and] suffer[ed] from server [sic] headaches due to not being able to eat his food for the fact of either beans and peas being on the tray and the said juices being put in the other food on the same said tray and for fear of his own life because of the fact the D.C.S.O. staff along with A.B.L. Management served the plaintiff on a daily bas[is] food that he could not eat if he did it would kill him." (*Id.*)[3]

The plaintiff specifically alleges that he talked to the ABL Defendants about his food allergies, but they ignored him without trying to verify his claims and, thus, were deliberately indifferent to the risk of serious physical harm to the plaintiff. He asserts generally that the defendants had a responsibility to provide him a halal diet that accorded with his religious convictions, that did not contain beans and peas, and that provided adequate nutrition to preserve his health. He asserts that they are liable to him under 42 U.S.C. § 1983 for failure to uphold that obligation.

### C.    Motion to Amend Claims Against the ABL Defendants

The ABL Defendants argue that the plaintiff's motion to amend should be denied because (1) it

---

[2] The time period to which the plaintiff refers appears to be December 2010 through October 2010. (ECF No. 122-1, at 14.)

[3] The plaintiff's proposed amended complaint refers to "attached" copies of grievances and other exhibits, but no documents were attached to the proposed amended complaint. The court presumes the plaintiff is referring to the documents attached to his original complaint.

could not survive a dispositive motion and is therefore futile; and (2) it is untimely, "the product of undue delay and based on facts known to Plaintiff at the time of his original Complaint." (ECF No. 133, at 3.) While arguing at length that the motion to amend should be denied as untimely, the ABL Defendants acknowledge that delay alone is not ordinarily sufficient to warrant denial of a motion to amend. They contend, however, that the unexcused delay combined with the futility of the proposed amendments justifies denial of the motion for leave to amend in this case.[4]

The law in the Sixth Circuit is clear: "Delay by itself is not sufficient reason to deny a motion to amend. Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted." *Bridgeport Music, Inc. v. Dimensional Films*, 410 F.3d 792, 805 (6th Cir. 2005) (citations omitted). This case, although it has been pending for some time, is not very far advanced in terms of its progression toward trial. The defendants do not assert that they are prejudiced by the motion to amend, and the court further finds that they had prior notice of the new food-allergies claim, based on the plaintiff's response to their motion to dismiss and other filings.

The ABL Defendants also assert that the motion to amend is futile because they are inappropriate defendants with respect to the plaintiff's new allegations regarding his food allergies. However, in making this argument, the ABL Defendants rely heavily on their Standard Operating Procedures ("SOPs"), which are attached to their response. The SOPs are unverified and in any event are clearly outside the pleadings. The court finds that it is not appropriate to consider the SOPs at this juncture in determining whether the amendment is futile.

The ABL Defendants also argue that the proposed amended complaint fails to state a valid conditions-of-confinement claim under the Eighth Amendment, insofar as the plaintiff's allegations do not show a deprivation that is "objectively, sufficiently serious," under *Farmer v. Brennan*, 511 U.S. 825, 832 (1994), or show that the ABL Defendants' subjective mindset amounted to deliberate indifference. The court disagrees. The plaintiff alleges that he has a life-threatening allergy to beans and peas, and he

---

[4] There is no dispute that ABL and its employees may be considered state actors subject to liability under § 1983, because the obligation to provide food service to individuals in state custody—traditionally a state function—has been contractually delegated to them. *See West v. Atkins*, 487 U.S. 42, 56 (1988) (holding that a private medical provider contracted to provide medical care to prisoners is a state actor for purposes of § 1983); *see also Street v. Corrs. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996) (CCA acts under color of state law because it performs the traditional state function of operating a prison).

includes at least one sample menu among the exhibits to his complaint that suggests that inmates fed a "Vegan-Kosher-Halal" diet, presumably including the plaintiff, were typically fed meals that featured beans once or even twice a day. (ECF No. 1-1, at 122.) The plaintiff claims he had constant headaches and that he lost 50 pounds during the relevant time frame as a combined result of the defendants' failure to provide meals that conformed to both his religious beliefs and his dietary restrictions. The court finds, for pleading purposes, that the plaintiff alleges a sufficiently serious deprivation to satisfy the *Farmer v. Brennan* standard.

Regarding the ABL Defendants' subjective mindset, the plaintiff does allege that the DCSO health-care providers "refuse to . . . contact the A.B.L. Management food service defendants about" the plaintiff's food allergies. (ECF No. 122-1, at 14.) The ABL Defendants argue that this statement demonstrates that the ABL Defendants had no control over whether the plaintiff should be designated as having food allergies—they simply comply with the designations given to them by jail officials. Notwithstanding, the plaintiff alleges that he talked directly with defendants Dulin and Woods about his food allergies, but they ignored him rather than investigating or confirming his statements regarding his food allergies. He further alleges generally that "A.B.L. Management served the plaintiff on a daily bas[is] food that he could not eat if he did it would kill him" (ECF No. 122-1, at 14), and that "the A.B.L. Management defendants acted with malice and intent by refus[ing] the plaintiff['s] request not to be serve[d] beans and peas in any form because of food all[ergies]." (*Id.* at 15.) As set forth above, to prevail on his Eighth Amendment claim, the plaintiff must establish that the defendants were subjectively aware of a serious need and deliberately disregarded an excessive risk that a failure to act would pose to his health. The court finds, at this juncture, that the plaintiff's new allegations against defendants Woods and Dulin are not entirely futile. To the extent the ABL Defendants argue that defendants Dulin and Woods cannot be held liable under § 1983 for the acts of their supervisees solely on the basis that they are supervisory employees, it appears that the plaintiff's allegations implicate Dulin and Woods directly and are not based solely on an attempt to hold these defendants liable on the basis of the actions of other employees.

The ABL Defendants also allege that the proposed amendments fail to cure deficiencies in the original complaint, as identified in their motion to dismiss, in particular that the plaintiff seeks to impose

liability on the corporate defendant, ABL, based on the conduct of its employees. It is well established that an entity cannot be liable solely on the basis that it employs one or more tortfeasors, because "[r]espondeat superior is not a proper basis for liability under § 1983." *McQueen v. Beecher Cmty. Schs.*, 433 F.3d 460, 470 (6th Cir. 2006). Instead, a private entity can be held responsible for an alleged constitutional deprivation only if there is a direct causal link between a policy or custom of the entity and the alleged constitutional violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *see also Johnson v. Karnes*, 398 F.3d 868, 877 (6th Cir. 2005) ("Like a municipality, a government contractor cannot be held liable on a *respondeat superior* theory. . . . [A] private contractor is liable for a policy or custom *of that private contractor*. . . ."). Simply stated, the plaintiff must "identify the policy, connect the policy to the [entity] itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds by Frantz v. Vill. of Bradford*, 245 F.3d 869 (6th Cir. 2001)).

In this case, for purposes of the motion to amend and the pleading requirements that apply to *pro se* complaints, the court finds that the plaintiff alleges facts that give rise to a reasonable inference that the ABL Defendants' failure to acknowledge or investigate the plaintiff's claim that he had food allergies arose from a policy or established procedure employed by ABL—that is, a policy of disregarding an inmate's representations regarding a serious food allergy unless it had received a prior directive from prison officials, without making any attempt to confirm or refute the inmate's claim. The plaintiff's allegations also suggest that his injury—the fact that he continued to be served food to which he was allergic and suffered weight loss and damage to his health as a result—was incurred because of execution of that policy. The claim against ABL cannot, at this stage, be deemed entirely futile.

Accordingly, the plaintiff's motion to amend his complaint will be granted, and the complaint will be deemed amended to state a claim under the Eighth Amendment against the ABL Defendants based on allegations of deliberate indifference to the plaintiff's claim of a severe food allergy in light of his right to adequate nutrition.

### D.     ABL's Motion to Dismiss

In light of the conclusion that the plaintiff's motion to amend is not futile and should be granted,

the court construes ABL's motion to dismiss as a motion for partial dismissal.

The initial complaint in this action was filed in September 2012, and the matter was referred to the magistrate judge after an initial review. The ABL Defendants filed a motion to dismiss the complaint on December 7, 2012 (ECF No. 48), in lieu of an answer. In February 2013, the plaintiff filed a response in opposition and a memorandum of law in support of his opposition to the motion to dismiss. (ECF Nos. 73, 74.) Magistrate Judge Bryant filed his R&R in July 2013, recommending that the ABL Defendants' motion to dismiss be granted (ECF No. 96). The plaintiff filed objections to the R&R (ECF No. 107) on August 5, 2013, and the ABL Defendants filed a "reply" to the objections shortly thereafter (ECF No. 114).

The ABL Defendants moved to dismiss the original complaint on the basis that (1) the deprivations alleged by the plaintiff and attributed to the ABL Defendants, even if presumed to be true, were not sufficiently serious to rise to the level of a constitutional violation; (2) the facts as alleged by the plaintiff did not show that the defendants had acted with deliberate indifference to his health or safety; (3) ABL could not be vicariously liable under § 1983 for the acts of its employees; (4) the plaintiff failed to allege the personal involvement of defendants Woods and Dulin in any of the acts giving rise to his claims; and (5) the plaintiff failed to show a "substantial burden on his religious freedom" as required to state a claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). (ECF No. 49.)

Magistrate Judge Bryant, in reviewing the motion, agreed that the plaintiff failed to state a claim under the Eighth Amendment. Specifically, the plaintiff alleged that he was not fed dinner on July 20, 2012, meaning that he went 24 hours without a meal; that for two weeks during Ramadan the defendants fed him (and other Muslims) meals that included processed meats which he could not eat according to the tenets of his religion; and that the portions of the meals served to him and other Muslims were too small, were not adequately wrapped, and on at least one occasion included under-cooked rice. The magistrate judge found that these allegations did not state a violation of the Eighth Amendment, because the plaintiff did not allege that his health suffered or that he required medical attention as a result of any of these events, and because he did not allege that the problems with his religious diet were the result of deliberate indifference on the part of the ABL Defendants. Additionally, the magistrate judge found that the plaintiff failed to allege facts supporting liability on the part of ABL, the entity, because none of the allegations specifically involved the company or established the existence of a policy or custom that gave

rise to his injuries. The magistrate judge also found that the plaintiff's allegations did not state a claim under the RLUIPA because the alleged "short-term and sporadic disruption of his Ramadan eating habits" did not establish that he suffered "a substantial burden on his religious freedom." (ECF No. 96, at 8 (quoting *Maynard v. Hale*, No. 3:11-cv-1233, 2012 WL 3401095, at *4 (M.D. Tenn. Aug. 14, 2012)).)

In his objections to the R&R, the plaintiff takes issue generally with the magistrate judge's finding that going without food for 24 hours did not state a substantial deprivation of rights. He contends that ABL and its management team acted with deliberate indifference in failing to keep an employee on site after hours during Ramadan to insure that there was enough food for the Muslim inmates who were fasting during Ramadan. He also insists that he missed more than one meal and that he submitted a grievance about that event as well, but he concedes that he did not seek medical treatment as a result of missing any meals. (*See* ECF No. 107, at 14 ("The plaintiff . . . did not know that you received medical treatment for not being feed [sic].").) He suggests that malice on the part of the ABL Defendants may be inferred from the fact that "their staff serve[d] the Muslim inmates process[ed] meat for a full two weeks." (*Id.*) And he also alleges that "the A.B.L. management defendants" fed the plaintiff food containing beans and peas, even though the plaintiff is "deathly" allergic to beans and peas and had informed the ABL defendants of this fact. (ECF No. 107, at 17.)[5]

With respect to his RLUIPA claim, the plaintiff simply states that he believes he is asserting a RLUIPA claim but that he does not know the law as well as the court and therefore presumes the court "will apply the proper law to these issues." (ECF No. 107, at 10.)

The court has conducted a *de novo* review of the original complaint in light of the plaintiff's objections and finds that the claims in the original complaint fail to state a claim against the ABL Defendants for violation of the First or Eighth Amendment or RLUIPA.

First, RLUIPA "protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of

---

[5] The plaintiff claims that he submitted four or five grievances about ABL's continuing to serve him beans and peas after being informed by the plaintiff that he could not eat them. (ECF No. 107, at 22.) Because the court has already determined, *supra*, that the plaintiff will be permitted to amend his complaint to include allegations about injuries related to his bean-and-pea allergy, the court has no need to address these allegations, except to note that they served to put the defendants on notice of these claims even prior to the filing of the motion to amend.

their religion." *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005). RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). Importantly, RLUIPA defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." § 2000cc-5(7)(A).

To state a *prima facie* RLUIPA claim at this stage in the proceedings, the plaintiff must establish that the exercise of his religion has been burdened by a government practice and that the burden is "substantial." *Hayes v. Tennessee*, 424 F. App'x 546, 554 (6th Cir. 2011). A prison official's action "will be classified as a substantial burden when that action forced an individual to choose between following the precepts of [his] religion and forfeiting benefits or when the action in question placed substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Id.* at 554–55 (internal quotation marks and citations omitted). However, the Sixth Circuit has also found that an action that "encumbered the practice of religion" but "did not pressure the individual to violate his or her religious beliefs" did not constitute a substantial burden. *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 734 (6th Cir. 2007); *cf. Adkins v. Kaspar*, 393 F.3d 559, 570 (5th Cir. 2004) (a governmental practice imposes a "substantial burden" on the exercise of religion "if it truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs"); *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003) (in the context of land-use regulation, noting that "a regulation that imposes a substantial burden on religious exercise is one that necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise . . . effectively impracticable").[6]

The religious exercise at issue in this case is the plaintiff's faith-dictated diet, which he asserts compels him to follow a halal diet and, during the holy month of Ramadan, to fast during the day. As set

---

[6] This standard is not uniform among the various circuits, and the Supreme Court has not offered any guidance. The First Circuit has rejected the "abstract tests" formulated by other circuits: "A burden does not need to be disabling to be substantial. We do not agree with those courts that have suggested that nothing short of coercion to change or abandon one's religious beliefs can meet the substantial burden test." *Roman Catholic Bishop of Springfield v. City of Springfield*, 724 F.3d 78, 96 (1st Cir. 2013).

forth above, he claims he missed at least one meal, allegedly as a result of the ABL Defendants' gross negligence in failing to ascertain that there was enough food for all the Muslim inmates observing Ramadan. In addition, for a period of approximately two weeks, the plaintiff was on the Ramadan list but not the halal diet list, and he received meals that included non-halal processed meat and fish. The plaintiff does not allege, however, that he ate the non-halal meat; he does not claim that he was unable to pursue his fast and follow his halal diet during that two-week period. In other words, it appears he was inconvenienced, perhaps even seriously inconvenienced, by the errors, but he does not allege facts suggesting that he was forced to choose between following the precepts of his religion and eating, or that the prison's failure to provide him with halal meals effectively pressured him to modify his behavior. A burden is less than "substantial" where it imposes merely an "inconvenience on religious exercise." *Konikov v. Orange Cnty.*, 410 F.3d 1317, 1323 (11th Cir. 2005). The court therefore finds that the complaint fails to state a claim for a violation of the RLUIPA. For the same reason, the plaintiff's factual allegations fail to establish a violation of his First Amendment rights. *See Barhite v. Caruso*, 377 F. App'x 508, 510 (6th Cir. 2010) (noting that to state a First-Amendment free-exercise claim, a plaintiff must show that the prison officials' actions "substantially burdened his sincerely held religious beliefs" (citation omitted)). *See also Lovelace v. Lee*, 472 F.3d 174, 199–200 (4th Cir. 2006) ("[T]he First Amendment affords less protection to inmates' free exercise rights than does RLUIPA.").

Insofar as the plaintiff is attempting to state a claim under the Eighth Amendment, the law is clear that state officials are required to provide prisoners "adequate food." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). More particularly, the Eighth Amendment requires that inmates be provided well balanced, nutritious meals sufficient to preserve health. *Green v. Ferrell*, 801 F.2d 765, 770 (5th Cir. 1986). The Eighth and First Amendment requirements overlap insofar as "prison administrators must provide an adequate diet without violating the inmate's religious dietary restrictions." *Alexander v. Carrick*, 31 F. App'x 176, 179 (6th Cir. 2002). Generally speaking, "[i]f the prisoner's diet, as modified, is sufficient to sustain the prisoner in good health, no constitutional right has been violated." *Id.*

In this particular case, the overlap between the First and Eighth Amendments is rendered more complex by the plaintiff's allegations of dietary allergies, as discussed above. Notwithstanding, the plaintiff here does not allege facts in the original complaint suggesting that he suffered any actual harm resulting

specifically from being deprived of meals for a twenty-four hour period on one occasion (or even two), or from being served meals that included non-halal processed meats for a two-week period during Ramadan. *See Richmond v. Settles*, 450 F. App'x 448, 456 (6th Cir. 2011) (affirming dismissal of Eighth Amendment claim based on inadequate nutrition where the plaintiff failed to allege that his health suffered as a result of the alleged deprivation of meals, stating "the deprivation of seven meals during [plaintiff's] six days on Behavioral Management does not rise to the level of an Eighth Amendment violation") (citing *Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (affirming the district court's conclusion that the prisoner's Eighth Amendment rights were not violated when he was served only one meal a day for 15 consecutive days where defendants had demonstrated that the one meal furnished was of sufficient caloric content to maintain normal health for the 15 days involved)). The court concludes that the plaintiff's factual allegations concerning missed meals and being served food that did not comport with his religious convictions, construed as true, fail to establish a violation of the plaintiff's Eighth Amendment rights.

In sum, the plaintiff's claims in the original complaint against the ABL Defendants, which focused specifically on his missing one meal and therefore going for one twenty-four hour period without being served a meal, and his being served meals that included non-halal meat for a period of two weeks, fail to state a claim for which relief may be granted under the Eighth Amendment, the First Amendment, or RLUIPA. These claims are subject to dismissal, and the ABL Defendants' motion to dismiss will therefore be granted in part with respect to these claims. However, as set forth above, the plaintiff will be permitted to amend his complaint to assert claims under the Eighth Amendment against the ABL Defendants based on their failure to accommodate his beans-and-peas allergy.

## III.     THE DCSO DEFENDANTS

### A.     Allegations of Fact

Magistrate Judge Bryant summarized the facts in the original complaint concerning the DCSO Defendants as follows:

> Plaintiff [Author] Ray Turner, a prisoner proceeding *pro se* and *in forma pauperis*, filed a complaint on September 6, 2012. (Docket Entry No. 1). Plaintiff alleged he was in the custody of the Davidson County Sherriff's Department during the duration of the alleged facts. He is also a practicing Muslim.
>
> Plaintiff's factual allegations contain four primary categories of incidents. First,

Plaintiff alleges that he was not permitted to pray in the manner his faith dictates on at least three occasions, nor could he gather with other Muslims during the month of Ramadan. Second, Plaintiff alleges that he was not provided the correct religious diet at times during his detention. On one occasion, Plaintiff alleges he did not eat for a period of twenty-four hours because he was not permitted by his faith to eat the food served by the correction officers and food providers. Third, Plaintiff alleges religious materials were removed from his room during two separate occasions. His hardback Qur'an was removed on one occasion, and four prayers written on two pieces of paper were removed on another. Fourth, Plaintiff alleges he was retaliated against by corrections officers due to his Muslim faith and grievances filed by the Plaintiff against them.

Additionally, several miscellaneous causes of action are alleged: racial discrimination resulting from special treatment of Caucasian inmates; violations of his Eighth Amendment right to be free from cruel and unusual punishment resulting from overcrowding; inadequacy of the law library resulting from denial of requests for legal research materials and books, pages, and materials missing from the library; and, abuse of the prisoner grievance system resulting from improper dealings with some of Plaintiff's grievances, others that were filed became missing, and one instance of an improper delay in receiving a response to a grievance.

(ECF No. 87, at 2–3.)

In his proposed amended complaint, the plaintiff reiterates most of the claims asserted in his original complaint. He also asserts that defendants Jonathan Craft, G. Thomas, Lt. Joshua Bone, Dan Weikal, K. Cox, Granvisse Earl-Young, Pam Hale, Sylvia Gray, Lt. Lehman, Byron Grizzle, and Lynn Norris violated Tenn. Code Ann. § 39-17-309 by retaliating against him for exercising his First Amendment rights, thus engaging in "civil rights intimidation." The plaintiff alleges that Tenn. Code Ann. §§ 41-4-101 and -109 provide that the sheriff of a county has custody and charge of the county jail, and, as jailer, the sheriff is required to provide adequate food and bedding to inmates of the county jail. The plaintiff further alleges that the DCSO Defendants conspired to intimidate him in violation of 18 U.S.C. §§ 241 and 242.

The plaintiff asserts that when he was "rebooked" in December 2010, he informed the Davidson County Sheriff Department, specifically the nurses at intake, about his allergy to beans and peas.[7] His family contacted the Davidson County Sheriff's Office about this issue as well. He claims that he filed grievances against "D.C.S.O." for continuing to serve him foods containing beans and peas and that he repeatedly signed up on sick call about his allergies, but "the D.C.S.O. health care provide[rs]" "refuse to give the plaintiff an allergies test for these Issues nor contact the A.B.L. Management food service

---

[7] The plaintiff claims that beans and peas are forbidden by a halal diet, but the court construes the plaintiff to mean that beans and peas cooked with pork are forbidden by a halal diet.

defendants about the plaintiff food all[erg]ies of beans and peas." (ECF No. 122-1, at 14.) He specifically alleges that he "talked to defendant Dan Welkal [sic] about his alleges [sic]." (ECF No. 122-1, at 14.) The plaintiff also alleges that he "lost over 50 pounds during this time period[8] from lack of the proper nutritional [sic] [and] suffer[ed] from server [sic] headaches due to not being able to eat his food for the fact of either beans and peas being on the tray and the said juices being put in the other food on the same said tray and for fear of his own life because of the fact the D.C.S.O. staff along with A.B.L. Management served the plaintiff on a daily bas[is] food that he could not eat if he did it would kill him." (*Id.*)

The plaintiff specifically alleges that he talked to defendants Dan Weikal, J. Johnson, Granvisse Earl-Young, Pam Hale, and Sylvia Gray about his food allergies, but they ignored him without trying to verify his claims. On this basis, the plaintiff claims that these defendants were deliberately indifferent to the risk of serious physical harm to the plaintiff. He asserts generally that the defendants had a responsibility to provide him a halal diet that accorded with his religious convictions, that did not contain beans and peas, and that provided adequate nutrition to preserve his health.

**B.    The Plaintiff's Motion to Amend the Claims Against the DCSO Defendants**

The DCSO Defendants argue that the plaintiff's motion to amend the claims in his complaint as they pertain to the DCSO Defendants should be denied because the proposed amendment would be futile. More specifically, these defendants contend that (1) the plaintiff's allegations of violations of state law, specifically Tenn. Code Ann. §§ 39-17-309, 41-4-101, and 41-4-109, do not state a claim under 42 U.S.C. § 1983, because "a mere violation of state law will not establish a proper claim under § 1983" (ECF No. 124, at 1 (quoting *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995))); and (2) there is no private right of action under Tenn. Code Ann. §§ 39-17-309, 41-4-101, and 41-4-109.

The fact that violations of state law do not give rise to a claim under § 1983 is not necessarily dispositive in this case, because the court has supplemental jurisdiction over any state law claims that form part of the same case or controversy as claims over which the court has original jurisdiction. 28 U.S.C. § 1367. It is clear, however, that Tenn. Code Ann. § 39-17-309 does not give rise to a private right of action. *Cf. Joslin v. Metro Nashville/Davidson Cnty.*, No. 3:12-cv-1284, 2013 WL 2250712, at *4 (M.D.

---

[8] As previously indicated, "this time period" apparently refers to December 2010 through October 2010. (ECF No. 122-1, at 14.)

Tenn. 2013) ("Tenn. Code Ann. § 39-17-309 does not itself confer a private right of action.").

Although the DCSO Defendants do not address the plaintiff's claim that the defendants' action violated 18 U.S.C. §§ 241 and 242, it is equally clear that these allegations do not state a claim for relief. "In determining whether to infer a private cause of action from a federal statute, our focal point is Congress' intent in enacting the statute." *Thompson v. Thompson*, 484 U.S. 174, 179 (1988). Because §§ 241 and 242 are purely penal, it cannot be inferred that Congress intended to create a private right of action in passing them. *Cf. Morganroth & Morganroth v. DeLorean*, 123 F.3d 374, 386 (6th Cir. 1997) ("Violations of [18 U.S.C. §§ 1341 and 1343] of the federal criminal code, however, do not give rise to private rights of action."); *Drake v. Enyart*, No. 3:06CV-217-S, 2006 WL 3524109, at *5 (W.D. Ky. Dec. 4, 2006) (likewise finding that 18 U.S.C. §§ 241 and 42, among other criminal code provisions, are "criminal statutes which do not give rise to any private right of action" (citing *Dugar v. Coughlin*, 613 F. Supp. 849, 852 n.1 (S.D.N.Y. 1985) (finding no private cause of action under 18 U.S.C. §§ 241 and 242)).

The existence of a private right of action under Tenn. Code Ann. §§ 41-4-101 and -109 is less clear.[9] The referenced statute simply provides that a county sheriff has a statutory obligation to provide adequate care to inmates in his custody. The plaintiff has not named the sheriff as a defendant, but he has named his "jailers," including Dan Weikal, administrator of the Criminal Justice Center, and Pam Hale, administrator of the Hill Detention Center, according to the plaintiff. Although the statute appears to create vicarious liability on the part of the sheriff for the jailer's actions, it does not obviate liability on the part of a jailer for failure to comply with his or her delegated responsibilities.

In addition, the DCSO Defendants do not address the plaintiff's allegations regarding his food allergies. As set forth above, the plaintiff also alleges that the defendants, including defendants Weikal and Hale, knew about and deliberately disregarded the plaintiff's complaints about his food allergies. At

---

[9] Section 41-4-101 states in pertinent part: "The sheriff of a county has . . . the custody and charge of the jail of the county and of all prisoners committed to the jail and may appoint a jailer, for whose acts the sheriff is civilly responsible." This provision on its face suggests that a sheriff may be vicariously liable under state law for his appointed jailer's failure to comply with whatever statutory duties are delegated to the jailer, and directly liable for any such failures for which the sheriff himself might be responsible. *See Raedle v. Townsend*, C/A 117, 1987 WL 7721, at * 2 (Tenn. Ct. App. March 12, 1987) (Franks, J., concurring) (concurring in the denial of the sheriff defendant's motion to dismiss a prisoner's claims against him, noting that the state statute makes the sheriff "civilly responsible" for the acts of the jailer); *see also Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1247 (6th Cir. 1989) (relying in part on the duties created by Tenn. Code Ann. §§ 41-4-101 and -109 to find that the sheriff defendant was liable under § 1983 in his official capacity for mistreatment of a paraplegic inmate).

this stage in the proceedings, the court finds that the plaintiff has, at a minimum, stated a colorable claim against jail administrators Weikal and Hale in their individual and official capacities, based on an apparent failure of either jail facility in which the plaintiff was detained to have in place an effective policy or procedure for dealing with inmates claiming at intake to have serious food allergies.

However, to the extent the plaintiff seeks to state a claim against defendants J. Johnson, Granvisse Earl-Young, or Sylvia Gray based on his having told them about his food allergies, the court finds that the allegations in the complaint are too vague to support his claims. Notably, defendant Gray is or was the chaplain of the facility. In that position, she has no apparent involvement in or legal responsibility regarding the plaintiff's health concerns, including claims of food allergies. The other defendants appear, based on the grievances attached to the plaintiff's complaint, to be supervisory officials who all, at one time or another, denied the plaintiff's grievances. The plaintiff does not allege or indicate what responsibility these defendants might have had to ascertain or act upon his allegations of food allergies. The court finds that the plaintiff's new food-allergy allegations fail to state a claim against these defendants in their official or individual capacity.

The plaintiff, in his proposed amended complaint, also attempts to revive other claims against these and other supervisory defendants based on their having denied grievances. In the Sixth Circuit, however, merely denying a grievance or affirming the denial of a grievance does not give rise to liability under § 1983. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (where defendants' "only roles . . . involve the denial of administrative grievances or the failure to act . . . they cannot be liable under § 1983"). *Cf. Martin v. Harvey*, 14 F. App'x 307, 309–10 (6th Cir. 2001) ("The denial of the grievance is not the same as the denial of a request to receive medical care."). Thus, generally speaking, an allegation that a supervisor was aware of an actionable wrong committed by a subordinate and failed to take corrective action "is insufficient to impose liability on supervisory personnel under § 1983." *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988). "[A] failure of a supervisory official to supervise, control, or train the offending individual officers is not actionable absent a showing that the official either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers ." *Hays v. Jefferson Cnty., Ky.*, 668 F.2d 869, 874 (6th

Cir. 1982).

In sum, the court finds that the proposed amended complaint is not entirely futile insofar as it asserts claims against defendants Dan Weikal and Pam Hale in their personal and official capacities regarding the plaintiff's food allergies, under 42 U.S.C. § 1983 and potentially under Tenn. Code Ann. §§ 41-4-101 and -109  as well. The plaintiff's motion to amend his complaint to include causes of action under 42 U.S.C. § 1983 and state law based on his allegations that these defendants were deliberately indifferent to the plaintiff's serious food allergy will be granted. The proposed new claims against the other defendants are, however, futile, and the plaintiff, though permitted to amend his complaint, will not be permitted to proceed with these claims.

### C.      The DCSO Defendants' Motion to Dismiss

#### 1.      *Procedural History*

The DCSO Defendants filed their motion to dismiss and supporting memorandum of law (ECF Nos. 44 & 45) in December 2012. They argued generally that (1) they were all entitled to qualified immunity on the basis that the plaintiff's allegations in his complaint and on the basis of the exhibits attached to the complaint which, the defendants claimed, demonstrate "that the DCSO Individual Defendants were acting reasonably in attempting to maintain order within the jail" (ECF No. 45, at 6); (2) the plaintiff's religious freedom was not substantially burdened); (3) the complaint failed to state a claim under the RLUIPA; and (4) the facts in the complaint failed to allege sufficient facts to state colorable § 1983 claims against the individual DCSO Defendants.

In a Report & Recommendation filed in June 2013, Magistrate Judge John Bryant recommended that the defendants' motion to dismiss be granted in part and denied in part. Specifically, he recommended that the motion to dismiss any claims under the RLUIPA be granted on the basis that the statute did not authorize a private right of action against government officials in their individual capacity, and the complaint did not state an RLUIPA claim against the defendants in their official capacity. He further concluded that it would be premature, on the defendants' motion, to determine as a matter of law whether the defendants' alleged actions substantially burdened the plaintiff's exercise of his religion. He, therefore, denied the defendants' motion to dismiss the plaintiff's free-exercise claim under § 1983.

The magistrate judge also considered whether the complaint alleged sufficient facts to link each

of the named defendants to actions that suggested a violation of the plaintiff's First Amendment rights. After reviewing the complaint closely, the magistrate judge concluded that the allegations in the complaint indicated that defendants Dan Weikal, Granvisse Earl-Young, Henry Lehman, Lynn Norris, Tony Wilkes, and Pam Hale did not act as corrections officers and instead occupied supervisory positions within the Davidson County Sheriff's Office. The magistrate judge therefore inferred that the plaintiff was alleging *respondeat superior* liability on the part of these defendants. Because *respondeat superior* liability is not available under § 1983, and because the plaintiff failed to allege facts indicating these defendants' personal involvement in the actions giving rise to the plaintiff's claims, the magistrate judge recommended that the claims against these defendants be dismissed.

With respect to one supervisory defendant, Bryon Grizzle, the magistrate judge recommended denying the motion to dismiss, as follows:

> Plaintiff states that Defendant Grizzle filled requests for copies of grievances for a white inmate without charge. However, Defendant Grizzle allegedly denied Plaintiff's request for a copy of his grievance records. This allegation is sufficient to state a claim against Defendant Grizzle under § 1983. Defendant Grizzle is not entitled to dismissal from the case at this time.

(ECF No. 87, at 16.) The magistrate judge likewise found that the complaint asserted sufficient individualized facts to support claims against corrections officers Jonathan Craft, Joshua Stagg, Joshua Bone, and Clarence Crawley under § 1983, either under the First Amendment or on the basis of retaliation. He recommended denying the motion to dismiss as it pertains to these defendants. He also addressed the defendants' argument that they were entitled to qualified immunity and concluded that the issue of qualified immunity was prematurely raised.

Finally, the magistrate judge recommended that the motion to dismiss be granted with respect to K. Cox, S. Gray, and G. Thomas on the basis that the plaintiff had failed to effect timely service of process on these defendants within the 120 days allotted by Rule 4(m), or at any time afterward, and he did not seek an extension of time within which to serve these defendants.

The plaintiff submitted objections to the Report & Recommendation on July 15, 2013 (ECF No. 95), and the non-dismissed defendants filed objections on July 11, 2013 (ECF No. 94). The defendants argued specifically that the court "may look" to the exhibits attached to the complaint in ruling on a Rule 12(b)(6) motion to dismiss, citing *Rondigo, L.L.C. v. Richmond Twp.*, 641 F.3d 673 (6th Cir. 2011), and

that, to withstand a motion to dismiss, the plaintiff "must allege enough facts to make his claims plausible, taking into consideration Mr. Turner's own attachments." (ECF No. 84, at 1–2.) In addition, the defendants argued that it was not premature to raise the issue of qualified immunity because the plaintiff had already conducted some discovery[10] and because the complaint included 194 pages of exhibits. In their objections, the defendants also raised much more comprehensive and detailed arguments as to why the claims against the individual defendants are subject to dismissal than they had in their original motion papers. They argue that, accepting as true all of the plaintiff's factual allegations, "including all facts contained in his exhibits" (ECF No. 94, at 3), they are entitled to judgment in their favor as a matter of law.

In a Memorandum and Order entered July 23, 2013, this court sustained in part the defendants' objections, without addressing the plaintiff's objections. Specifically, the court found that the magistrate judge had not considered the voluminous documents attached to the *pro se* plaintiff's complaint in ruling on the motion to dismiss and that it was error for the magistrate judge to fail to consider the complaint's exhibits, based on clearly established Sixth Circuit case law. The matter was therefore remanded to the magistrate judge for a ruling on the motion to dismiss that "takes into account the arguments of [the DCSO Defendants] based upon the exhibits attached to the Complaint." (ECF No. 99, at 1–3.)[11]

In response to the court's directive, Magistrate Judge Bryant issued a second Report and Recommendation ("R&R") addressing more specifically the DCSO Defendants' arguments based on the exhibits attached to the complaint. He again recommended that the motion to dismiss filed by the DCSO Defendants be denied with respect to the § 1983 claims against defendants Grizzle, Craft, Stagg, Bone, and Crawley and denied with respect to the affirmative defense of qualified immunity, without prejudice to the remaining defendants' ability to raise that defense at a later time. The remaining DCSO Defendants and plaintiff Author Ray Turner filed objections to this R&R as well.

### 2. *The Plaintiff's Objections*

The plaintiff filed objections to both of the magistrate judge's R&Rs (ECF Nos. 87, 96) on the

---

[10] The fact that such discovery has been conducted begs the question of why the defendants did simply file a motion for summary judgment, which, under the circumstances presented here, would likely have been more cost-effective for their clients and conserved judicial resources as well.

[11] The plaintiff also filed objections, arguing that the motion to dismiss should be denied in its entirety. Because the matter was being remanded for further consideration by the magistrate judge, the court did not consider the plaintiff's objections at that juncture.

DCSO Defendants' motion to dismiss. (ECF Nos. 95, 126.) In his first set of objections, (1) the plaintiff disputes the dismissal of his RLUIPA claims on the basis that the defendants substantially burdened him in the practice of his religion and repeats many of the allegations in his complaint in support of that contention; (2) regarding the plaintiff's failure to effect service on defendants G. Thomas, K. Cox, and Sylvia Gray, the plaintiff states that he received the defendants' responses to his discovery requesting addresses for these defendants in April 2013, but the defendants refused to respond to the plaintiff's interrogatories and requests for documents, or to respond to the plaintiff's "discovery motion pursuant to Rules 34(b) and 37(a)" (ECF No. 95, at 11); and (3) regarding the supervisory defendants, the claims against whom the magistrate judge recommended dismissing for failure to allege particularized facts showing those defendants' personal involvement, the plaintiff states that these defendants "to[ok] an active part . . . in a conspiracy" to deny the plaintiff his constitutional right to practice his religion. (*Id.* at 12.) The plaintiff claims that the supervisory defendants' part in this conspiracy was to "cover up the act[s] of intimidation, harassment, and fear of bodily injury" perpetrated by defendants Stagg, Craft and other corrections officers. (*Id.* at 13.)

The plaintiff does not specifically address the magistrate judge's legal arguments, but he attempts to make new factual claims, some of which are also included in his proposed amended complaint. In his objections to the magistrate judge's second R&R, the plaintiff generally repeats the objections to the magistrate judge's first R&R.[12] With respect to the service-of-process issue, the plaintiff claims that he filed another motion for an extension of time for effecting service of the summons and complaint on defendants K. Cox, S. Gray, and G. Thomas pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, but that the court has yet to rule on that motion.

The court finds the plaintiff's objections to be without merit. First, the court agrees with the magistrate judge that RLUIPA does not permit a private right of action against government officials in their individual capacity. Although the Sixth Circuit has not expressly addressed the issue, every other circuit court of appeals to consider the question has held that RLUIPA does not create a private right of action against defendants in their individual capacities. *See, e.g.*, *Washington v. Gonyea*, 731 F.3d 143 (2d Cir.

---

[12] The court notes that the plaintiff objects to the dismissal of the claims against defendant Jonathan Craft. The magistrate judge did not recommend the dismissal of the plaintiff's § 1983 claims against that defendant. (*See* ECF No. 115, at 6.)

2013); *Nelson v. Miller*, 570 F.3d 868, 886–89 (7th Cir. 2009); *Rendelman v. Rouse*, 569 F.3d 182, 188–89 (4th Cir. 2009); *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 328–29 (5th Cir. 2009), *aff'd on other grounds*, by --- U.S. ----, 131 S. Ct. 1651 (2011); *Smith v. Allen*, 502 F.3d 1255, 1271–75 (11th Cir. 2007), *abrogated on other grounds by Sossamon*, 131 S. Ct. 1651. While these courts for the most part addressed the question of *state* officials' liability rather than that of *county* officials, their holdings were based on a finding that RLUIPA "was enacted pursuant to Congress' spending power, *see* 42 U.S.C. § 2000cc-1(b)(1), which allows the imposition of conditions, such as individual liability, only on those parties actually receiving the state funds." *Washington*, 731 F.3d at 145. To conclude that RLUIPA authorizes individual liability on the part of individual persons *not* receiving such funds, then, "would 'raise serious questions regarding whether Congress had exceeded its authority under the Spending Clause.'" *Id.* at 146 (quoting *Nelson*, 570 F.3d at 889). In addition, the plaintiff's allegations do not support an official-capacity claim, for the reasons stated in the R&R (ECF No. 115).

Second, the court finds that dismissal of the unserved defendants is appropriate. Under Rule 4(m), if a defendant is not served within 120 days after the complaint is filed, the court is to dismiss the action without prejudice as to those defendants, or order that service be made within a specified time. The court may extend the time for service "for an appropriate period" if the plaintiff "shows good cause for the failure" to effect timely service. *Id.* In this case, the plaintiff filed one motion for extension of time to serve the summons and complaint on defendants K. Cox, S. Gray, and G. Thomas. (ECF No. 67.) This motion was filed on January 7, 2013, and the plaintiff requested an additional 90 days. (*Id.*)

Although the magistrate judge did not address the motion within that 90-day period, the plaintiff effectively received the requested extension, but the plaintiff did not effect service on the three unserved defendants during that time period. On June 7, 2013, five months (and approximately 150 days) after the plaintiff filed his motion for a 90-day extension of the 120-day deadline, the magistrate judge entered an order directing that the plaintiff's motion be terminated as moot. The plaintiff did not seek another extension of the deadline during the intervening period, or make any effort to explain to the court why he was unable to effect service during that time. This action has now been pending for more than a year and service on the last three defendants still has not been effected. The court will therefore overrule the plaintiff's objections to the recommendation that the claims against these defendants be dismissed and

will accept the magistrate judge's recommendation that the motion to dismiss be granted as to defendants Gray, Thomas and Cox.

Finally, the court has reviewed the complaint and proposed amended complaint and finds that the plaintiff's conclusory and speculative assertions that the supervisory defendants, including Weikal, Wilkes, Earl-Young, Hale, Lehman, and Norris, were involved in a "conspiracy" to deprive him of his civil rights are supported only by the plaintiff's allegations that these defendants denied or upheld the denial of the plaintiff's grievances. As set forth above, the denial of a grievance does not give rise to § 1983 liability. *Shehee*, 199 F.3d at 300. Nor does it support an inference that the official denying the grievance is in a conspiracy with the official against whom the grievance is asserted. The plaintiff's objections to the recommendation that the claims in the original complaint against these defendants be dismissed will be overruled, and the magistrate judge's recommendation will be accepted.

### 3. The DCSO Defendants' Objections

The DCSO Defendants' objections are as follows:

(1) that Magistrate Judge Bryant erroneously concluded that the exhibits must be verified or authenticated before they could be relied on in the context of a Rule 12 motion to dismiss;

(2) that the magistrate judge erred in distinguishing the facts in this case from those in *Rondigo, L.L.C. v. Richmond Twp.*, 641 F.3d 673 (6th Cir. 2011), and that the outcome in *Rondigo* should apply here as well;

(3) that the facts of this case are distinguishable from *Franklin v. Dudley*, No. CIV S–07–2259 FCD EFB P, 2009 WL 3073930 (E.D. Cal. Sept. 22, 2009), where the exhibits were attached purely for the purpose of proving exhaustion; and

(4) that the case of *Jones v. City of Cincinnati*, 521 F.3d 555 (6th Cir. 2008), is not controlling and is distinguishable on the basis that (a) the exhibits in this case are not "unilateral statements" by the defendants and are instead a "two-way dialogue . . . between [the plaintiff] and the defendants" (ECF No. 121, at 4); (b) there is not necessarily a conflict between the plaintiff's allegations in his complaint and the statements in the exhibits; and (c) in most instances, the exhibits actually form "the basis for [the plaintiff's] allegations" (*id.* at 5).

The court notes that the defendants' arguments in their present objections are largely

hypothetical insofar as they do not raise specific examples of how the exhibits must be considered in determining whether the complaint states a claim for which relief may be granted *except* with reference to defendant Byron Grizzle.

Notably, to back up a little, in their original motion to dismiss, the defendants argued regarding defendant Grizzle only that the complaint failed to state a claim against him, without specific reference to the exhibits or even a detailed argument as to why the complaint failed to state a claim against him. (ECF No. 45, at 12.) Magistrate Judge Bryant disagreed, not unreasonably, based on the paucity of argument in the motion to dismiss. Judge Bryant found that the complaint alleged that the plaintiff was treated differently from a similarly situated white inmate, because Grizzle filled requests for copies of grievances for that inmate without charge. (ECF No. 45, at 16–16 (citing ECF No. 1, at 15, ¶¶ 98–99).)

In their objection, defendants argued generally that *Rondigo, L.L.C. v. Richmond Twp.*, 641 F.3d 673 (6th Cir. 2011), authorized courts to look at all exhibits attached to a complaint in ruling on a Rule 12(b)(6) motion, an argument that was not articulated in their original motion.  They also raised a number of new arguments in the section of their objection devoted to qualified immunity. Specifically regarding Grizzle, they pointed out that the complaint failed to allege the personal involvement of Grizzle in the refusal to process the plaintiff's requests for copies, and argued that the exhibits to the complaint show that the plaintiff was requesting "300+ copies of all his documentation spanning a year and a half," that his request was denied because he lacked funds to cover the cost of these copies, and that he had failed to show that the alleged comparator likewise presented "a similar enormous copy request, also without sufficient funds, but nevertheless received his copies." (ECF No. 94, at 3–4.) The defendants further contend that, since this is the plaintiff's exhibit, the plaintiff must allege facts sufficient to "overcome" the exhibit. (*Id.* at 4.)

In *Jones v. City of Cincinnati*, 521 F.3d 555 (6th Cir. 2008), the defendants argued that, "because a 'copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes,' Fed. R. Civ. P. 10(c), all the facts stated in the exhibits to the complaint must be assumed to be true for purposes of the motion to dismiss." The Sixth Circuit rejected that argument, holding that,

> [w]here a plaintiff attaches to the complaint a document containing unilateral statements made by a defendant, where a conflict exists between those statements and the plaintiff's allegations in the complaint, and where the attached document does not itself form the basis for the allegations, Rule 10(c) does not require a plaintiff to adopt every word within

> the exhibits as true for purposes of pleading simply because the documents were attached to the complaint to support an alleged fact. Rather, we treat the exhibit as an allegation that the officers made the statements in the transcripts and we treat that allegation as true.

*Id.* (internal quotation marks and citation omitted). This pronouncement remains the law.

Three years later, in *Rondigo, L.L.C. v. Richmond Twp.*, 641 F.3d 673 (6th Cir. 2011), the Sixth Circuit confronted a very different situation. In that case, the Sixth Circuit reversed the district court's denial of the defendants' motion to dismiss on qualified immunity grounds and appeared to consider statements made by the defendants in exhibits that were either attached to the complaint or referenced in the complaint and attached to the defendants' motion to dismiss. However, as Magistrate Judge Bryant pointed out in his R&R, the complaint in that case "substantiate[d] *undisputed* and facially legitimate reasons for the state defendants' complained-of actions. . . ." *Id.* at 683 (emphasis supplied). The defendants argue that, "[w]hen the [Sixth Circuit] used the words 'undisputed' and 'facially legitimate reasons,' the Court was referring to the fact that the plaintiff's own exhibits tell the story." (ECF No. 121, at 2 (citing *Rondigo*, 641 F.3d at 683).) In other words, in *Rondigo*, the plaintiffs did not appear to dispute any of the material statements in the numerous exhibits attached to their lengthy complaint.[13] Moreover, the documents that the defendants relied on in *Rondigo* were not merely responses to grievances, as in this case.

This court finds, as a matter of law, that *Rondigo* is distinguishable and that it is generally not permissible to accept as true the defendants' responses to a *pro se* prisoner's grievances that are attached to his complaint, where the prisoner disputes the validity of the defendants' statements, as the *pro se* plaintiff implicitly does in this case. To the extent the defendants are attempting to argue to the contrary, the Sixth Circuit's holding in *Jones* forecloses their argument.

However, with respect specifically to Byron Grizzle, the court nonetheless finds that the plaintiff's own allegations and the undisputed portions of the grievance responses attached to the complaint fail to

---

[13] For instance, the plaintiffs in *Rondigo* alleged that the company to which they sought a comparison as being similarly situated had not been subjected to an elevated number of on-site inspections. The plaintiffs did not dispute, however, that the state defendants' frequent inspections of the plaintiff's property "were precipitated by township residents' complaints of odors. Plaintiffs allege these complaints were false and unsubstantiated, as verified by the site inspections," but they did not dispute that the complaints had actually been made, and thus could not refute "the facial legitimacy of the state defendants' purpose for conducting the inspections." *Rondigo*, 641 F.3d at 683.

provide facts sufficient to state a claim against this defendant. The plaintiff alleges that Grizzle is the "records Dir. and Director of Inmate Information for the Davidson County Sheriff Department and is responsible for inmates['] records as well as grievances" (Complaint at 5, ¶ 13), and that the plaintiff has filed multiple grievances against Grizzle as "records supervisor" for race discrimination because "the record department process and fill a request for a white inmate name Rickey Allen for copies of all of his grievances, this white inmate did not pay for his copies" (*id.* at 15, ¶ 98). The grievances attached to the complaint corroborate the plaintiff's allegations insofar as they demonstrate that Grizzle is a supervisor and that the plaintiff's claims against him are apparently based on Grizzle's denial of a grievance related to the records department's refusal to process a request by the plaintiff for copies of his grievances because he could not pay for them. (*See* Exhibits to Complaint, ECF No. 1-1, at 167–70.) Even assuming that the "records department" did fill a request for a white inmate who did not pay for his records, as the plaintiff alleges, these allegations not suggest that Grizzle himself condoned or authorized or was in any way involved in the decision to provide records to the white inmate without payment. Instead, according to the plaintiff's allegations and the documentation attached to the complaint, it is clear that Grizzle simply responded to a grievance based upon record department staff members' refusal to release records to the plaintiff. (ECF 1-1, at 169–70.) The court does not accept Grizzle's statements regarding the reason for the refusal to be true, for purposes of the defendants' motion to dismiss, but the court does accept that Grizzle is the records department supervisor and that he responded to and denied the plaintiff's grievance in his capacity as a supervisory employee. Again, the plaintiff's allegations and Grizzle's response to the grievance do not suggest that Grizzle was involved in or aware of any instance of race discrimination that might have been perpetrated by other employees in the records department.

As set forth above, denying a grievance or affirming the denial of a grievance does not give rise to liability under § 1983. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (where defendants' "only roles . . . involve the denial of administrative grievances or the failure to act . . . they cannot be liable under § 1983"); *Martin v. Harvey*, 14 F. App'x 307, 309–10 (6th Cir. 2001) ("The denial of the grievance is not the same as the denial of a request to receive medical care."). Thus, generally speaking, an allegation that a supervisor was aware of an actionable wrong committed by a subordinate and failed to take corrective action "is insufficient to impose liability on supervisory personnel under § 1983." *Poe v.*

*Haydon*, 853 F.2d 418, 429 (6th Cir. 1988). Accordingly, the court finds that the complaint fails to state a claim against Grizzle. In all other respects, The defendants' objections will be overruled and the magistrate judge's report and recommendation will be accepted.

**IV.    CONCLUSION**

An order consistent with the findings herein is filed contemporaneously with this memorandum.


Aleta A. Trauger
United States District Judge